UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| EXTEND, INC.,<br>            Plaintiff,<br>   v.<br>MYPILLOW, INC.,<br>            Defendant. | Case No. 24-cv-06152-JCS<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 14 |
|---|---|

## I. INTRODUCTION

In this action, Plaintiff Extend, Inc. ("Extend") seeks to recover payments Defendant MyPillow, Inc. ("MyPillow") promised to make under a March 2024 Termination Agreement ("Termination Agreement"). Extend filed its complaint on August 30, 2024 asserting a single claim for breach of contract. MyPillow failed to appear or answer the complaint and the Clerk entered default against it on October 28, 2024. Dkt. No. 13. Presently before the Court is Extend's Motion for Default Judgment ("Motion"). Because MyPillow has not appeared or consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c), the case shall be reassigned to a district court judge for disposition with the following Report and Recommendation. On December 18, 2024, a hearing was held on the Motion, and thereafter Extend submitted supplemental materials in support of the Motion. For the reasons stated below, the Court RECOMMENDS that the Motion be GRANTED.

## II. BACKGROUND

### A. The Complaint

Extend is a Delaware corporation with its principal place of business in San Francisco, California. Compl. ¶ 1. MyPillow is a Minnesota corporation based in Chaska, Minnesota. *Id.* ¶

2. In November 2022, Extend entered into a contract with MyPillow to provide MyPillow's customers with shipping and product protection services in exchange for a percentage of revenues generated by the sale of those services (the "Agreement"). *Id.* ¶ 9. In March 2024, MyPillow was overdue on its payments under the Agreement. *Id.* ¶ 10; *see also* Compl., Ex. A (Termination Agreement), Preamble (stating that "MyPillow owe[d] Extend a total of $453,352.17 as of the end of February 2024).

On March 29, 2024, the parties entered into the Termination Agreement, which terminated the Agreement effective April 1, 2024 and obligated MyPillow to make the following payments:

- April 3, 2024: $75,000
- April 17, 2024: $100,000
- May 8, 2024: $100,000
- May 29, 2024: $125,000
- June 12, 2024: $53,352.17
- "any additional amount due and owing under the Agreement related to the sale of Extend services during the month of March 2024."

Compl., Ex. A (Termination Agreement), Sections 1, 3. The Termination Agreement contained the following forum selection and choice of law provision:

> **Governing Law; Choice of Forum**. This Agreement will be governed by and interpreted in accordance with the laws of the State of California, without giving effect to any principles of conflict of laws. Any legal action or proceeding arising under this Agreement will be brought exclusively in the federal or state courts located in San Francisco, California and the parties hereto irrevocably consent to personal jurisdiction and venue therein.

*Id.*, Section 5.

MyPillow owed Extend $110,799.22 under the Agreement for Extend's services during March 2024. Compl. ¶ 11. On April 4, 2024, Extend emailed an invoice to MyPillow for these services, including a spreadsheet reflecting the transactions upon which the amount due for March 2024 was based. *Id.* ¶ 12 & Ex. B (invoice); *see also* dkt. no. 20 (Second Supplemental Declaration of Ethan Jacobs in Support of Motion for Default Judgment) (summarizing contents of spreadsheet an attesting to total amount of $110,799.22).

In May 2024, MyPillow did not make any payments under the Termination Agreement and Extend's counsel sent MyPillow a demand for payment. Compl. ¶ 12. On June 23, 2024, Mike Lindell, Chief Executive Officer of MyPillow, emailed that he would 'connect this week[ ]' [b]ut Mr. Lindell did not connect, and never did." *Id.* ¶ 14. Since June 2024, MyPillow "has ignored repeated inquiries and demand for payment . . . and has not paid any of the amounts due under the Termination Agreement." *Id.* ¶ 15.

Extend initiated this action on August 30, 2024. In its breach of contract complaint, it seeks compensatory damages, costs of suit and pre- and post-judgment interest. Compl. at p. 4.

### B. The Motion

In the Motion, Extend asks the Court to enter default judgment against MyPillow and award $564,151.39 in compensatory damages. According to Extend, the amount of damages it seeks is "exactly the amount set out as MyPillow's payment obligation under the Termination Agreement: $453,352.17 in payments specified in Section 3, and $110,799.22 for the "additional amount due and owing … related to the sale of Extend services during the Month of March 2024" and reflected in the invoice attached as Exhibit B to the Complaint." Motion at 5.

## III. ANALYSIS

### A. Legal Standards Governing Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). The Court may not enter default judgment against a minor or incompetent person unless he or she is adequately represented. *Id.* A plaintiff seeking default judgment also must aver that the defendant is not in military service entitled to the benefits of the Servicemembers Civil Relief Act of 2003. *See* 50 App. U.S.C.A. § 521(b)(1). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed true. Fed. R. Civ. Proc. 8(b)(6).

A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*,

3

616 F.2d 1089, 1092 (9th Cir. 1980). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, courts are instructed to consider several facts in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In reviewing the plaintiff's substantive claims and the sufficiency of the complaint, the factual allegations, except those concerning damages, are deemed to have been admitted by the non-responding party. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### B.  Adequacy of Service

As a preliminary matter, where entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). The Court concludes that service was proper.

Plaintiff has supplied a proof of service showing that the complaint and summons were personally served on Doug Wardlow, who is general counsel for MyPillow, at 1550 Audubon Rd, Chaska, MN 55318. Dkt. no. 11. According to the Minnesota Secretary of State's business search website, of which the Court takes judicial notice, the address where Wardlow was served is the MyPillow corporate offices address. *See* https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=52337245-94d4-e011-a886-001ec94ffe7f. "While the Ninth Circuit has not addressed this issue, other courts have held that service on the general counsel of a corporation constitutes service on a "managing or general agent" under Rule 4(h)(1)(B)."[1] *Boards of Trustees*

---

[1] Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure provides for service on a corporation "in a judicial district of the United States" "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).

4

*of AGC Operating Eng'r Health & Welfare Fund v. Ross Island Sand & Gravel Co*, No. 3:19-CV-02025-YY, 2020 WL 5507276, at *2 (D. Or. May 27, 2020), report and recommendation adopted in part sub nom. *Boards of Trustees of Agc-Operating Eng'r Health & Welfare Fund v. Ross Island Sand & Gravel Co.*, No. 3:19-CV-2025-YY, 2020 WL 3265394 (D. Or. June 17, 2020) (citing *United States v. Cornwell*, No. 6:18-cv-2194-Orl-22EJK, 2020 WL 674092, at *5 (M.D. Fla. Feb. 11, 2020); *American Centennial Ins. Co. v. Handal*, 901 F. Supp. 892 899 (D.N.J. 1995)).

Here, the Court finds that service on MyPillow's general counsel at its corporate office constituted sufficient service on a "managing or general agent" for purposes of satisfying Rule 4(h)(1)(B).

### C. Jurisdiction

Extend has alleged sufficient facts to establish that there is subject matter jurisdiction based on diversity under 28 U.S.C. § 1132 because the parties are citizens of different states and more than $75,000 is in controversy. Further, MyPillow has consented to this Court's personal jurisdiction under the Termination Agreement by agreeing to the forum selection clause in that agreement. *See Homelink Int'l Inc. v. Zhang*, No. 24-CV-02358-VKD, 2024 WL 4197634, at *7 (N.D. Cal. Sept. 12, 2024) ("Under federal law, a valid forum selection clause operates as consent to a court's personal jurisdiction.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (recognizing that personal jurisdiction is "waivable" through "a variety of legal arrangements," including forum selection provisions)). Accordingly, the Court has jurisdiction over this action.

### D. *Eitel* Factors

1. Possibility of Prejudice to Plaintiff

The first factor established by the Ninth Circuit in *Eitel* considers whether the plaintiff would be prejudiced by denial of default judgment. *Craigslist, Inc. v. Naturemarket, Inc*., 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). Extend will be prejudiced by denial of default judgment because if this Court denies its request for default judgment, Extend will be left without a remedy. *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Accordingly, this factor weighs in favor of entry of default judgment.

### 2. Merits of plaintiff's claim and sufficiency of complaint

Next, the Court must consider the sufficiency of the allegations and the substantive merits of Extend's breach of contract claim to determine whether entry of default judgment is warranted. *Eitel*, 782 F.2d at 1471. In California, the elements of a cause of action for breach of contract are: 1) the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)). Plaintiff's breach of contract claim is sufficient, both as a matter of pleading and on the merits. Plaintiff has alleged the existence of the Termination Agreement, that it "did all the significant things that the Termination Agreement required it to do[,]" that MyPillow failed to make the payments it agreed to under the Termination Agreement, and that Extend has been damaged as a result. Compl. ¶¶ 16-20. In addition, Extend supplied a copy of the Termination Agreement as an attachment to the Complaint. Therefore, this factor weighs in favor of entry of default judgment.

### 3. Amount of money at stake

The court must also consider the amount a plaintiff requests in monetary damages. *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citing Eitel, 782 F.2d at 1471−72). Here, Extend requests damages of $564,151.39. This sum is "significant" but it is reasonable because it is "the amount indicated by the [agreement's] own terms." *Williams v. La Perla N. Am., Inc.*, No. 3:23-CV-01633-JSC, 2024 WL 1974546, at *4 (N.D. Cal. May 3, 2024) (finding a default judgment of $1,362,506.82 based on past rent owed was reasonable because it was supported by the lease terms). Therefore, this factor supports entry of default judgment.

### 4. Possibility of disputed material facts

The fifth *Eitel* factor weighs the possibility that material facts may be in dispute. Eitel, 782 F.2d at 1471-72. In light of the clear terms of the Termination Agreement and the allegations in the Complaint, the Court finds that there is not a significant possibility that there are disputes of material fact. Therefore, this factor weighs in favor of entry of default judgment.

#### 5. Excusable neglect

Under the sixth *Eitel* factor, courts consider whether the defendant's default may have been the product of excusable neglect. *Id.* Here, MyPillow was properly served and there is no indication that its default was due to excusable neglect. Indeed, Extend has supplied a declaration of counsel indicating that MyPillow's general counsel exchanged email communications with him after the lawsuit was served, indicating that MyPillow was aware of the lawsuit but failed to respond. *See* Declaration of Ethan Jacobs, dkt. no. 14-1, ¶ 5 ("After Extend served MyPillow through Mr. Wardlow, he and I exchanged several emails regarding the possibility of MyPillow negotiating a settlement agreement to resolve this lawsuit, and the last email I received from him was on October 16, 2024."). This factor therefore favors entry of default judgment.

#### 6. Policy in favor of judgment on the merits

Finally, the seventh *Eitel* factor considers the policy that generally disfavors default judgments because "cases should be decided upon their merits whenever reasonably possible." *Id.* at 1472. However, a resolution of the dispute on the merits it not possible because MyPillow has failed to appear. Therefore, this factor favors entry of default judgment.

#### 7. Conclusion

Based on its consideration of the *Eitel* factors, the undersigned recommends that default judgment be entered against MyPillow.

### E. Damages

Having determined that entry of default judgment is warranted, the Court now must determine the appropriate remedy. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Under Rule 54(c), the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Further, a plaintiff seeking default judgment "must 'prove up' the amount of damages that it is claiming." *Philip Morris USA, Inc. v. Castworld Products,Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).

Extend seeks compensatory damages in the amount of $564,151.39, that is, the $453,352.17 in payments that are listed in the Termination Agreement and the $110,799.22 payment for March 2024, which is specifically provided for under the Termination Agreement and

1 reflected in the invoice attached to the complaint. These damages are adequately supported and
2 should be awarded in full.

## IV.    CONCLUSION

For the reasons stated above, the undersigned recommends that the Court GRANT the Motion, enter default judgment against MyPillow and award $564,151.39 in damages. Extend is ordered to serve a copy of this Report on MyPillow and file a proof of service to that effect. Any party may file objections to the recommendations in this Report within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b).

**IT IS SO ORDERED.**

Dated: January 16, 2025

JOSEPH C. SPERO
United States Magistrate Judge

8